30 C.C.P.A. (Patents)

## In re MARTIN et al.
### Patent Appeal No. 4655.

Court of Customs and Patent Appeals.

Dec. 26, 1942.

Harris G. Luther, of East Hartford, Conn. (James W. Colvin, of East Hartford, Conn., H. Frank Wiegand, of New York City, and Edwin R. Hutchinson, of Washington, D. C., of counsel), for appellants.

W. W. Cochran, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting all of the claims, Nos. 8 and 17 to 20, inclusive, in appellants' application for a patent for an alleged invention relating to a mechanism for synchronizing the speeds of a plurality of engines; e. g., a plurality of engines for airplanes.

Claims 17 and 18 are sufficiently illustrative of the appealed claims. They read:

"17. Means for synchronizing the speeds of a plurality of aircraft engines driving controllable pitch propellers comprising, a pitch changing motor for each propeller, a power source for each motor, a power unit operable at a controlled speed, a number of elements equal to the number of engines to be synchronized driven by said power unit, a connection driven by each engine, a respective speed difference responsive control element operatively connected to each power unit driven element and to each engine driven connection, and means connecting each control element to said power source and directly to the respective pitch changing motor to render said control elements effective to control the pitch of the respective propellers in accordance with the magnitude and direction of speed differences between said power unit and the respective engines.

"18. Means for synchronizing the speeds of a plurality of aircraft engines driving controllable pitch propellers comprising, a pitch changing motor for each propeller, a power source for each motor, a power unit operable at a controlled speed, a generator driven by said power unit, a synchronous motor for each engine to be synchronized driven by said generator, a driving connection on each of said engines, a respective speed difference responsive control element operatively connected to each synchronous motor and each respective engine driven connection, and means connecting each control element with a power source and directly with a respective pitch changing motor to render said control elements effective to control the pitch of the respective propellers in accordance with the magnitude and direction of the speed difference between said power unit and the respective engines."

The references are:

O'Bryan, 801,394, October 10, 1905;
Salmon et al. (Brit.), 134,258, October 30, 1919;
Salvetti (Italian), 308,713, June 13, 1933;
Ferris, 1,939,113, December 12, 1933;
Lauret (French), 762,114, January 18, 1934;
Caldwell et al., 2,026,814, January 7, 1936;
Berry, 2,066,819, January 5, 1937;
Moross, 2,087,291, July 20, 1937;
Carlson, 2,104,582, January 4, 1938;
Martin, 2,105,089, January 11, 1938;
Martin, 2,135,190, November 1, 1938;
Martin, 2,144,429, January 17, 1939;
Caldwell et al., 2,174,717, October 3, 1939.

Claim 8 was rejected by the Primary Examiner on the ground that it was readable only upon the form of the invention disclosed in Fig. 1 of appellants' application, the examiner stating that as appellants had elected to prosecute claims to the specific form of the invention disclosed in Fig. 3 of their application and as no generic claim was allowed, appellants were not entitled to prosecute claim 8 in this application. That claim was not rejected on the prior art cited.

Although counsel for appellants contend that the other appealed claims, Nos. 17 to 20, inclusive, "include generic claims," and that should the court hold that they are patentable over the prior art cited the ground of rejection as to claim 8 would disappear, it is conceded by counsel that the question of the patentability of that claim is not before us. Accordingly, claim 8 will be given no further consideration.

Appellants' application, filed June 5, 1937, discloses a master engine and two so-called "slave" or "controlled" engines. The speeds of the controlled engines are synchronized with the speed of the master engine. The master engine is provided with a manual control by means of which the pilot increases or decreases the

speed of the master engine, and the synchronizing system automatically synchronizes the speed of the controlled engines with that of the master engine. The propellers in appellants' apparatus have rotatable blades and means for controlling the pitch angle of such blades. The speed of each of the engines is increased or decreased by adjusting the pitch of the blades of its propeller, which is accomplished by admitting or releasing oil under pressure to the pitch changing motor in the propeller. The pitch of the propeller blades of the master engine is adjusted by an indirect manual control; that is, the master engine is provided with a speed regulating governor, and the governor is provided with a speed control mechanism which is associated with a manual control device. The master engine drives a generator which supplies electric current to two synchronous electric motors. One of the motors is adjacent one of the controlled engines and the other motor is adjacent the other controlled engine. The generator electrically drives the shafts of the two electric motors at the same speed as that at which it is driven by the master engine. Each of the controlled engines mechanically drives a shaft, and each, as stated in the brief of counsel for appellants, is provided with a differential mechanism "for comparing the speed of the shaft of the synchronous motor with that of the mechanically driven shaft * * * and to cause the pitch of the corresponding engine-driven propeller to change in one direction or the other when there is a difference in speed between the two shafts." The control of the pitch changing motors in the propellers by the differential mechanism is direct as distinguished from an indirect control by means of a speed regulating governor.

It is unnecessary that we here describe the differential mechanism or the benefits derived therefrom, that is, the prevention of "chattering" or "hunting," as it is pointed out in appellants' application, and it is conceded here by counsel for appellants, that such mechanism and the advantages thereof are fully disclosed in the reference patent to Caldwell et al., No. 2,026,814, issued to appellants January 7, 1936, on an application filed June 6, 1934, which patent is owned by the United Aircraft Corporation, the assignee of appellants' involved application. Counsel for appellants point out, however, that the Caldwell et al.

patent discloses mechanism for controlling the speed of but a single engine; that although it discloses means for effecting direct control of the pitch changing motor of the propeller, it does not disclose the synchronizing of a slave or controlled engine or engines with a master engine; and that the motor disclosed in that patent is not a synchronous motor.

The basic references relied upon by the tribunals of the Patent Office are the patent to Caldwell et al., No. 2,026,814, hereinbefore referred to, and the patent to Martin (one of the appellants here) No. 2,105,089. The latter patent, which is owned by the assignee of appellants' involved application, issued January 11, 1938, on an application filed May 7, 1936, and relates to mechanism for synchronizing the speed of a plurality of slave or controlled engines with that of a master engine. The differential mechanisms disclosed in that patent are mechanically driven, rather than electrically driven as are those in the structure defined by appealed claims 18, 19, and 20. In appellants' apparatus, defined by claims 18 to 20, inclusive, an alternating current generator, driven by the master engine, electrically drives the shafts of the synchronous motors adjacent the controlled engines at the same speed as that at which it is driven by the master engine. The speed control of the master engine in the Martin reference patent is substantially the same as that disclosed in appellants' application; that is, it is manual and indirect, being controlled by a speed regulating governor. However, in the Martin patent the control of the pitch changing motors in the propellers of the controlled engines is also indirect; that is, the control is by means of speed regulating governors, whereas the control by the differential of the pitch changing motors in appellants' structure is direct.

It is stated in the Martin patent (No. 2,-105,089) that by means of the patentee's arrangement, the *governor* of the *controlled* engine "is manually adjusted until its speed is approximately the same as the speed of the [master] engine * * *. After this manual adjustment *minor adjustments* to maintain the [controlled] engine * * * exactly in synchronism with the [master] engine * * * are effected automatically by the synchronizing unit [differential] * * *." (Italics not quoted.)

It is clear from that patent that it was necessary in the patentee's arrangement to

manually adjust the speed of the speed regulating governors of the controlled engines to approximately the same speed as that of the master engines; that only minor differences in speed between the controlled engines and the master engine could be automatically adjusted by the patentee's synchronizing differential unit; and that in order to prevent breakage of his apparatus, when the speed of the master engine and that of the controlled engines varied more than a predetermined amount, it was necessary, as stated by counsel for appellants, that the patentee provide his differential mechanism with a so-called "throwout arrangement." The patentee's throwout mechanism, which is somewhat complicated, need not be described here. It is sufficient to say that it is fully described in the patent, and is covered broadly by some of the patentee's claims.

Claim 17 was rejected by the Primary Examiner on the Martin patent, No. 2,105,-089, hereinbefore explained. The examiner pointed out in his statement to the board that the pitch angle of the blades of the propellers in that patent are indirectly controlled by means of speed regulating governors, and that such a method of control is old in the art as disclosed in the reference patents to Salmon et al., Salvetti, and Lauret, and two other patents which need not be identified as they are not otherwise cited as references. The examiner cited the patents to Martin, No. 2,135,190, and Caldwell et al., No. 2,174,717, as disclosing the "fluid actuated blade moving mechanism"; that is, the mechanism per se by means of which the pitch of the blades of a propeller are adjusted. No issue is raised here as to such disclosure, and the mechanism referred to need not be described.

With reference to claim 17, the Board of Appeals stated that if the indirect control of the pitch changing motors in the propellers by means of speed regulating governors, disclosed in the Martin patent (No. 2,105,089) and in the other patents referred to by the Primary Examiner, was unsatisfactory, it would be obvious to one skilled in the art to substitute therefor the direct control mechanism disclosed in the patent to Caldwell et al., No. 2,026,814. The board did not discuss the reasons assigned by the Primary Examiner in his rejection of appealed claims 18, 19, and 20, but contented itself with the statement that if claim 17 was not allowable for the reasons assigned

by the board, there was nothing in the brief of counsel for appellants which convinced it that the details set forth in those claims involved more than an obvious expedient in view of the art relied upon by the examiner. We return, therefore, to the examiner's statement for the reasons assigned by him for the rejection of claims 18, 19, and 20.

Claims 18 and 19 were rejected by the Primary Examiner on the patent to Martin (No. 2,105,089) in view of either the patent to Moross or the patent to Carlson, the examiner stating that it would not involve invention to substitute the electrical synchronizing unit, disclosed in each of the latter patents, for the mechanical synchronizing unit disclosed in the patent to Martin.

The patent to Moross relates to automatic synchronizing apparatus in which a synchronous electric motor is used for synchronizing the speed of a plurality of controlled engines with that of a master engine. The synchronous motor disclosed in that patent is not of the type defined by appealed claims 18, 19, and 20. There is no disclosure of a differential which could be utilized for synchronizing the speed of the shafts of synchronous motors with the speed of the shafts driven by the controlled engines to control the pitch of their propeller blades.

The Primary Examiner stated, however, that the synchronous motor disclosed in the Moross patent was the equivalent of appellants' synchronous motors which are operated by current from a generator driven by the master engine. The examiner also pointed out that appellants' type of synchronous motor is old in the art, as disclosed in the reference patents to Martin (No. 2,-144,149), O'Bryan, Ferris, Berry, and Carlson.

Claim 20 was rejected by the Primary Examiner on the patent to Caldwell et al. (No. 2,026,814) in view of the patent to O'Bryan, the examiner stating that the only difference between the structure disclosed in the Caldwell et al. patent and that defined by claim 20 is that the motor of Caldwell et al. is not a synchronous motor and that it would not involve invention to provide the Caldwell et al. apparatus with synchronous motors of the type disclosed in the patent to O'Bryan.

Counsel for appellants point out in their brief that although the patents to O'Bryan, Berry, Moross, and Carlson disclose syn-

chronizing motors, they do not disclose synchronous motors to operate differentials.

It may be stated here, however, that the patent to Ferris discloses a synchronizing motor to drive one arm of a differential to control the speed of paper machines, and that the patent to Martin (No. 2,144,429) discloses synchronous motors operatively connected with differential mechanisms.

According to the disclosure in their application, appellants have substituted the indirect control of the pitch of the propeller blades of the master engine, disclosed in the Martin patent (No. 2,105,089), for the direct control of the pitch of the propeller blades of the single engine, disclosed in the patent to Caldwell et al. (No. 2,026,-814), and the direct control of the pitch of the propeller blades of the single engine in the Caldwell et al. structure for the indirect control of the pitch of the propeller blades of the controlled engines, disclosed in the Martin patent, and have employed an electrical drive, rather than the mechanical drive disclosed in the patent to Martin. By so doing, they achieved new and useful results; that is, automatic synchronization of the speeds of the controlled engines with the speed of the master engine, regardless of excessive variations in the speed of the master engine, without the use of the complicated throw-out system to prevent danger of breakage of parts, disclosed in the patent to Martin (No. 2,105,089), which controlled, automatically, only minor variations in speed between the master engine and the controlled engines. That such new and useful results were thus obtained by appellants, has not been questioned by the tribunals of the Patent Office, and that they are of vital importance, is so obvious as to require no discussion.

■ Although counsel for appellants have not distinguished in their brief the structure defined in claim 17 from that defined in claims 18, 19, and 20, it will be observed that claim 17 does not define a structure in which an electrical drive (called for by claims 18, 19, and 20) is employed instead of a mechanical drive. The difference between the structure defined in claim 17 and the apparatus disclosed in the Martin patent (No. 2,105,089) is that claim 17 calls for direct control of the pitch changing motors in the propellers of the controlled engines (hereinbefore explained), rather than indirect control by means of speed regulating governors, disclosed in the Martin patent. Accordingly, claim 17 does not

accurately define appellants' contribution to the art, nor are we able to hold that the structure defined in that claim, the electrical drive not being included therein, would function in such manner as to overcome the disadvantages hereinbefore stated as being inherent in the structure disclosed in the Martin patent (No. 2,105,089). We are of opinion, therefore, that claim 17 was properly rejected by the tribunals of the Patent Office.

■ We are not unmindful of the fact that the various elements in appellants' combination defined in claims 18, 19, and 20 are old, and that the tribunals of the Patent Office were of opinion that it would be obvious to one skilled in the art to combine those elements, as appellants have done, and secure the new and useful results obtained by such a combination. However, as stated by counsel for appellants, the patentee Martin, one of appellants, was fully aware on May 6, 1936, when he filed his application which matured into patent No. 2,105,089, of the direct control of the pitch changing motor in the single engine disclosed in the Caldwell et al. patent, No. 2,026,814 (Martin being one of the patentees), the application for which was filed June 6, 1934. Nevertheless, at that time it did not occur to the patentee Martin, who, we think it is fair to say, is one skilled in the art, to provide his structure with an electrical drive and the direct control of the pitch changing motors in the propellers of the controlled engines, and thus eliminate his elaborate throw-out system for preventing breakage of parts and obtain what he failed to obtain—automatic synchronization of the speeds of the controlled engines with the speed of the master engine, regardless of excessive variations in the speed of the master engine. Furthermore, we find nothing in the prior art cited which suggests either appellants' combination, or the new and useful results obtained by such a combination. We are of opinion, therefore, that the combination defined by claims 18, 19, and 20 involves invention.

It should be understood that, in concluding that claim 17 is not patentable because it does not include the electrical drive called for by claims 18, 19, and 20, we are not holding that the mere substitution in the Martin patented device of an electrical drive for his mechanical drive involves invention. There is nothing of record to indicate that such a substitution would produce the beneficial results obtained by the combination defined in claims 18, 19, and

20. What we do hold is that the combination defined in claims 18, 19, and 20, which includes the electrical drive and the direct control of the pitch changing motors in the propellers of the controlled engines, produces new and useful results and is patentable over the prior art cited.

As hereinbefore stated, counsel for appellants state in their brief that claims 17 to 20, inclusive, include "generic claims"; that is, a claim or claims generic to the alleged invention defined in claim 8.

 We find nothing in the decisions of the tribunals of the Patent Office to indicate whether any of the claims hereinbefore held to be patentable over the references of record—18, 19, and 20—are generic. As stated in the brief of the Solicitor for the Patent Office, "The examiner merely pointed out that no generic claim had been allowed." If any of those claims are generic, then, of course, appellants are entitled to prosecute appealed claim 8 in the application here involved. However, we do not pass upon that issue, preferring that it be disposed of, at least in the first instance, by the tribunals of the Patent Office in view of our decision holding claims 18, 19, and 20 to be patentable over the prior art.

For the reasons stated, the decision of the Board of Appeals is modified, being reversed as to claims 18, 19, and 20 and affirmed as to claim 17, and, so far as claim 8 is concerned, the cause is remanded to the tribunals of the Patent Office for further consideration.

Modified and remanded.